IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| MICHELE DAMIANO | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PX-16-920 |
| INSTITUTE FOR IN VITRO SCIENCES, *et al.*, | * | |
| Defendant(s). | * | |

******

**MEMORANDUM OPINION**

Pending in this action is a motion for summary judgment filed by Defendant Institute for In Vitro Sciences (IIVS). ECF No. 37. The issues are fully briefed, and the Court now rules pursuant to Local Rule 105.6 because no hearing is necessary. For the following reasons, IIVS' motion is GRANTED.

**I.  BACKGROUND**

Unless otherwise noted, the following facts are undisputed. Damiano was employed by IIVS as an Accounting Assistant/HR Coordinator from February 3, 2014, until her termination on September 9, 2015. ECF No. 1 at 3–4. IIVS maintained a group health plan, which included Group Long-Term ("LTD") and Short-Term Disability Insurance Plans ("STD," and collectively, "Disability Plans") for the benefit of its employees. *Id.* Paychex Insurance Agency, Inc. ("Paychex") administered the insurance benefits of the Disability Plans. The Disability Plans are governed by the Employee Retirement Security Act of 1974 (ERISA). *Id.*

On September 9, 2015, IIVS presented Damiano with a letter terminating her employment effective immediately and setting out the terms of the termination ("Termination

1

Letter"). ECF No. 1 at 4. The Termination Letter stated that the severance package included "[c]ontinuation of current health and disability insurance benefits paid in full by IIVS, through October 31, 2015." ECF No. 15-3 at 5; *see also* ECF No. 1 at 4. IIVS' officers arranged the continuation of all benefits as "a gesture in recognition of [Damiano's] time with us." Dep. of Erin Hill ("Hill Dep."), ECF No. 42-1 at 38; *see also* Dep. of Rodger D. Curren ("Curren Dep."), ECF No. 42-2 at 18 (stating that the severance package "included the healthcare benefits and disability benefits because we thought that . . . would recognize the good service."). Prior to firing Damiano, IIVS consulted with the service provider of IIVS' insurance benefits, Paychex, to confirm that coverage could be continued as described in the Termination Letter. *See* Hill Dep., ECF No. 42-1 at 39–42; Curren Dep., ECF No. 42-2 at 20–21.

On October 3, 2015, Damiano was hospitalized and underwent emergency brain surgery. ECF Nos. 1 at ¶ 26 & 37-3 at 56. On October 8, 2015, Damiano received COBRA[1] correspondence notifying her that her insurance coverage under the IIVS plan would end on October 31, 2015, as stated in the Termination Letter. ECF No. 15-2 at 5. Damiano, assuming that the Termination Letter and October 8 correspondence concerning insurance coverage were correct, contacted IIVS through counsel on October 23, 2015, to seek STD and LTD benefits. *See* ECF Nos. 42-8 & 37-3 at 135. IIVS told Damiano's counsel that, contrary to the terms of the Termination Letter and the October 8 letter, Damiano would not be eligible for disability benefits. ECF Nos. 42-8 & 37-3 at 135.

Shortly thereafter, Damiano received a second COBRA notice, dated October 23, 2015, notifying her that "coverage under the Plan will end on September 9, 2015," the date of Damiano's termination, 44 days earlier than she was led to believe. *See* ECF No. 37-3 at 97.

---

[1] The Consolidated Omnibus Budget Reconciliation Act (COBRA) contains certain provisions governing temporary continuation of health coverage.

Damiano completed, signed, and returned a COBRA Election/Waiver form on October 26, 2015. ECF No. 37-3 at 107–10. The form did not include a place to sign up for COBRA continuation coverage for disability benefits. *Id.*

Damiano submitted an application for LTD benefits from Humana on February 12, 2016. *See* Damiano Dep. at 67–76. After Humana requested additional information from her attending physicians and employer to complete the LTD application, Damiano did not pursue her application any further because she "realized that [she] was . . . no longer employed with IIVS" and "just held on to the documents because [she] wasn't able to send them to the company." *See* Damiano Dep. at 76. She did not return the application, speak with her physicians regarding the application, or have any further contact with Humana or IIVS about disability benefits. Damiano Dep. at 75–78, 81–83, 96–103. Damiano received unemployment benefits from the State of Maryland on April 23, 2016, through September 2016. Damiano Dep. at 103–04, 193–195. In late October of 2016, Damiano began looking for new employment. Damiano Dep. at 104.

Damiano filed this suit on March 28, 2016, alleging claims against IIVS and Paychex for breach of fiduciary duty under ERISA § 502(a)(3), statutory remedies for violation of COBRA, and breach of contract. ECF No. 1. IIVS and Paychex filed a joint motion to dismiss, ECF No. 15, which was granted as to the breach of contract claims as preempted by ERISA, and denied as to all other counts. ECF No. 21. On July 26, 2017, the parties stipulated to dismissal of the COBRA and unpaid dental benefits claims against IIVS and all claims against Paychex, which this Court granted, ECF Nos. 35 & 36. As a result, only Damiano's ERISA breach of fiduciary duty claim against IIVS remains.

IIVS argues that summary judgment in its favor is warranted because Damiano has failed to generate sufficient evidence that its misrepresentations were material or that the

misrepresentations caused her "actual harm." ECF No. 37. In the alternative, IIVS argues that Damiano cannot show that she was disabled within the terms of the disability policy, did not exhaust her claims, and because her claim is barred by judicial estoppel. *Id.*; *see also* ECF No. 43. The Court addresses each argument in turn.

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). The party moving for summary judgment bears the burden of demonstrating the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the non-moving party, summary judgment must be denied. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The facts, and all inferences drawn from the facts, must be viewed in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). The opposing party cannot rest on the mere allegations or denials of her pleading but instead must, by affidavit or other evidentiary showing, point to facts that give rise to a material issue in dispute. Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S. at 252.

## III. ANALYSIS

### a. Judicial Estoppel

IIVS contends that Damiano's claims are barred by judicial estoppel because of representations that she made to obtain unemployment benefits from the State of Maryland. *See* ECF Nos. 37-1 at 12–13 & 37-3 at 114. To receive unemployment benefits, an applicant must

4

represent that she is able to work and will continue to look for a job during the period for which benefits are paid.  *See* ECF No. 37-3 at 114; *see also* Damiano Dep. at 104.  Damiano received unemployment from April 2016 through September 2016.  ECF No. 37-3 at 114–15; Damiano Dep. at 103–04, 193–94.  Thus, IIVS contends, Damiano cannot argue that she was disabled and "unable to work" because this position is inconsistent with the position taken to her benefit in the earlier unemployment proceeding.  ECF No. 37-1 at 12; *see also Lowery v. Stovall*, 92 F.3d 219, 223–24 (4th Cir. 1996).

This argument is without merit.  Judicial estoppel precludes a party from asserting a position in one court that is inconsistent with a prior position successfully asserted in another court.  The doctrine is principally designed to "prevent such attempted abuse of the judicial system." *Lowery*, 92 F.3d at 223.  Damiano submitted her unemployment *prior to* her emergency brain surgery which rendered her disabled. *See* ECF No. 37-1 at 12–13.  Her unemployment benefits were not paid until several months thereafter.  *See* ECF Nos. 37-3 at 114; Damiano Dep. at 103–04, 193–94.  At summary judgment, when viewing all facts in the light most favorable to Damiano, the Court cannot infer that her pre-surgery claim for unemployment renders her unable to claim she was disabled in this case.  More critically, IIVS does not argue that Damiano previously made a differing representation to a *court* during a prior *judicial* proceeding. *See Lowery*, 92 F.3d at 224 ("[T]he prior position must have been accepted by *the court*.") (emphasis added).  Judicial estoppel, accordingly, cannot bar Damiano's ERISA claims.

**b. Exhaustion of Administrative Remedies**

IIVS also argues that Damiano's claim for breach of fiduciary duty is barred for failure to exhaust administrative remedies under the pertinent employee benefit plan.  *See* ECF No. 37-1 at 11–12; *Makar v. Health Care Corp.*, 872 F.2d 80, 82 (4th Cir. 1989). Damiano's claim is

5

premised on affirmative misrepresentations by IIVS regarding benefits, and in this way, her cause of action is not a "mere recasting of a claim for benefits." *Smith v. Snydor*, 184 F.3d 356, 363 (4th Cir. 1999). Accordingly, administrative exhaustion is not required, and IIVS' argument in this regard also fails. *Id*. at 362–64 (4th Cir. 1999); *see also Barnett v. Perry*, No. CCB-11-122, 2011 WL 5825987, at *3–*5 (D. Md. Nov. 16, 2011).

### c. Adequacy of Evidence on Breach of Fiduciary Count

Turning to the merits of Damiano's breach of fiduciary duty count, for Damiano to succeed, she must demonstrate that: (1) the defendant was acting in its fiduciary capacity when making misrepresentations regarding plan benefits; (2) the information misrepresented was material; and (3) that she was harmed. The parties do not contest that IIVS was acting in a fiduciary capacity when it made the alleged misrepresentations, *see generally* ECF Nos. 37-1 & 42; *see also Curren Dep.*, ECF No. 42-2 at 21–22. IIVS does argue, however, that Damiano cannot demonstrate as a matter of law that IIVS' misrepresentation was material and, if so, that the misrepresentation caused Damiano actual harm.

A misrepresentation is material "if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision in pursuing benefits to which she may be entitled." *DiFelice v. U.S. Airways, Inc.*, 397 F. Supp. 2d 758, 770 n. 12 (E.D. Va. 2005) (quoting *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 449 (6th Cir. 2002)). "Misleading communications to plan participants regarding plan administration (for example, eligibility under a plan, the extent of benefits under a plan) will support a claim for breach of fiduciary duty." *Pirelli*, 305 F.3d at 449 (quoting *Krohn v. Huron Memorial Hosp.*, 173 F.3d 542, 547 (6th Cir. 1999).

Damiano has generated sufficient evidence from which a factfinder could determine that IIVS' representations were material. IIVS' Termination Letter told Damiano that she retained plan benefits when she did not. *Compare* ECF No. 43-1 *with* ECF Nos. 42-6 & 42-7. Moreover, IIVS' President, Erin Hill, not only authored the letter, but presented it to Damiano, adding to the reliability of the representations made within. *See generally* Hill Dep., ECF No. 42-1. On this basis alone, a jury could find that Damiano reasonably relied on the contents of the letter, and thus the misrepresentations included in that letter were material. *See* ECF No. 37-3 at 5; Damiano Dep. at 23–24, 143–150. That the express terms of the disability plan limited benefits to active employees in no way undercuts whether Damiano reasonably believed that IIVS was extending those benefits to her upon termination, as plainly stated in her termination letter. *Tesiman v. United of Omaha Life Ins. Co.*, 908 F. Supp. 2d 875, 885 (W.D. Mi. 2012) (denying summary judgment where the express terms of the policy contradicted the representations of the defendants because a reasonable jury could find that the plaintiff's reliance on the misrepresentations was reasonable). Thus, the question of materiality is proper for resolution by the finder of fact.

As to Damiano's burden to demonstrate that she was harmed, at the outset the parties disagree as the applicable standard. IIVS contends that Damiano must show her "detrimental reliance" on IIVS' material misrepresentation, where Damiano argues that a less demanding standard applies, and she must show that she was actually harmed by the misrepresentation. *See* ECF Nos. 42 at 13 & 43 at 8–9. Because ERISA itself does not set out the standard, the court determines it by the equitable remedy sought. *See CIGNA Corp. v. Amara*, 563 U.S. 421, 443 (2011); *Retirement Comm. of DAK Americas LLC v. Brewer*, 867 F.3d 471, 485–86 (4th Cir. 2017).

Here, Damiano seeks unspecified "equitable remedies, to be determined by the Court in a later hearing." *See generally* ECF Nos 1 & 42 at 1, 13 (requesting "appropriate equitable relief."). Although the Court cannot understand how Damiano is unable to articulate damages more definite than "appropriate equitable remedies" at the close of discovery, the Court is confident that Damiano cannot sustain her burden under either standard. *See Amara*, 563 U.S. at 443–44.

The Court first addresses whether the facts, taken in the light most favorable to Damiano, meets the standard of actual harm. To prove actual harm, plaintiff must "show that the violation injured him or her." *Amara*, 563 U.S. at 444. However, Damiano does not marshal any facts that she was actually harmed by IIVS' material misrepresentation.

Damiano first argues that she was harmed because her application for disability benefits was denied. However, the undisputed material facts clearly show that Damiano submitted her application long after the misrepresentation, and that the application was rejected as incomplete. IIVS misrepresented that benefits would extend through October 31, 2015. Damiano submitted her application for disability benefits in February 12, 2016, well after she knew of IIVS' mistake. Damiano's February 12 application was also incomplete, and she never submitted a completed application. Dep. of Damiano at 68–79.; Dep. Ex. 12; *accord Brewer*, 867 F.3d at 486. Further, it is undisputed that a completed application must include supporting statements by the applicant's treating physicians regarding the scope and severity of the claimed disability. *See* Dep. of Damiano at 75–78, 81–83, 96–103. At no time before Damiano submitted her application, *or* after she learned that the application was incomplete, did Damiano discuss with either of her attending physicians the necessary information for her application. *Id.* Damiano, therefore, has generated no facts to demonstrate how IIVS' misrepresentations ― as opposed to

the shortcomings in the application itself — caused her actual harm.  *See* Fed. R. Civ. P. 56(c)(1); *accord Brewer*, 867 F.3d at 486.

Damiano next argues that she was harmed because had she known that IIVS could not extend benefits as promised in her termination letter, Damiano would have negotiated "additional money as part of her severance agreement."  ECF No. 42-4 at ¶ 12.  Damiano, once again, provides no evidence that *any money* was negotiated as part of her severance, or that the severance itself was part of negotiations more broadly.  Nor did Damiano generate any evidence that had she asked for "more money," IIVS would have at all entertained it.  *See* Dep. of Damiano at 25–30, 149–50; Damiano Interrog., ECF No. 37-3 at 133; ECF No. 42-4.  Accordingly, this "harm" is too speculative to defeat a motion for summary judgment.  *See* Fed. R. Civ. P. 56(c)(1); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 ((1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."); *accord Brewer*, 876 F.3d at 486 (finding that "speculative and undefined claims of loss" did not "bear any casual nexus to a fiduciary breach" and that summary judgment was warranted).

If the detrimental reliance standard applies, Damiano likewise has failed to generate any evidence to demonstrate harm.  To prove detrimental reliance, the plaintiff must show that plaintiff acted or failed to act in reliance on the misrepresentation, and plaintiff's action or inaction proximately caused losses or other tangible injuries.  *See, e.g. Tootle v. ARINC, Inc.*, 222 F.R.D. 88, 97 (D. Md. 2004) (citing cases); *see also Detrimental Reliance*, Black's Law Dictionary (10th Ed. 2014).  Critically, no evidence supports that after IIVS wrongly promised extension of benefits, Damiano acted or refrained from acting in a manner that caused her quantifiable harm.  Damiano, for example, presents no evidence that had she been told the truth

9

regarding post-termination disability coverage, she would have purchased private disability insurance, immediately obtained new employment with similar benefits, or otherwise altered her insurance coverage decisions. *See generally* Damiano Dep.; *see also* Damiano Interrog., ECF No. 37-3 at 133; ECF No. 42. Rather, Damiano specifically testified that she was "was going to extend . . . medical coverage only" after the October 31, 2015 deadline. Damiano Dep. at 152. No facts, therefore, would allow a reasonable jury to conclude that Damiano relied to her detriment on IIVS' misrepresentations. Accordingly, summary judgment is granted in IIVS' favor.

IV. **CONCLUSION**

Because Damiano has failed to generate evidence from which a reasonable jury could find that she was harmed from IIVS' misrepresentations, summary judgement is GRANTED. A separate Order follows.

<table>
<tr><td>3/13/2018<br>Date</td><td>/S/<br>Paula Xinis<br>United States District Judge</td></tr>
</table>